UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DENNIS, | ) |
| Plaintiff, | ) CASE NO. 05-CV-11270-GAO |
| vs. | ) |
| WACHOVIA SECURITIES, LLC | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE VERIFIED COMPLAINT,
OPPOSITION TO MOTION TO VACATE THE ARBITRATION AWARD,
AND CROSS-MOTION TO CONFIRM THE ARBITRATION AWARD**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (6) and (7) and 19(b), Defendant Wachovia Securities, LLC ("Wachovia" or "Defendant") files this Memorandum of Law in Support of its Motion to Dismiss the Verified Complaint, Opposition to Motion to Vacate the Arbitration Award, and Cross-Motion to Confirm the Arbitration Award.

Plaintiff John Dennis ("Plaintiff" or "Mr. Dennis") has filed a Verified Complaint and Motion to Vacate Arbitration Award ("Motion to Vacate"), which should be dismissed for two reasons. First, the Motion to Vacate is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff has failed to set forth sufficient allegations to support his conclusory assertion that the decision of the arbitrators was "contrary to the facts and law to the extent that the arbitrators exceeded their powers and so imperfectly executed their powers that a mutual, final and definite award upon the subject matter was not made." (Compl. ¶ 33.)

Second, the Motion to Vacate is subject to dismissal under Federal Rules of Civil Procedure 12(b)(1) and (7). Michael Ewanouski ("Mr. Ewanouski") was a party to the underlying NASD arbitration in which the arbitrators considered and rejected Plaintiff's claim that Mr. Ewanouski purchased securities on his behalf that were unsuitable for his investment objectives. Mr. Ewanouski plainly is an indispensable party to any action to have that arbitration award vacated. However, the joinder of Mr. Ewanouski will destroy diversity jurisdiction, and there is no federal question jurisdiction. Accordingly, the Motion to Vacate should be dismissed.

## PROCEDURAL HISTORY

On or about January 16, 2004, Plaintiff filed a Statement of Claim in arbitration before the National Association of Securities Dealers ("NASD") seeking compensatory damages in the amount of $132,891.21, attorneys' fees, and costs from his broker, Mr. Ewanouski, and his broker's employer, Wachovia.

On March 21-22, 2005, the parties litigated the matter at an arbitration held pursuant to the rules of the NASD.[1] During the two-day hearing, Wachovia and Mr. Ewanouski presented evidence and testimony to demonstrate that (i) Plaintiff knew exactly what was going on in his accounts; (ii) the investments Mr. Ewanouski made on Plaintiff's behalf were in fact suitable for his investment objectives; and (iii) Plaintiff never complained about any of the investments until long after he lost money in the historic market downturn.

## FACTS

At the hearing, Plaintiff sought to hold Mr. Ewanouski and Wachovia liable for losses he incurred in the stock market downturn of 2000-2001. The evidence and testimony presented at the hearing, however, demonstrated that Plaintiff, a very savvy businessman, is an experienced

---

[1] All parties signed the Uniform Submission Agreement pursuant to which they indicated their submission to arbitration and their willingness to be bound by the arbitrators' decision.

investor who had been Mr. Ewanouski's client at two other firms prior to following him to Wachovia.[2] Plaintiff indicated on his account application, which was presented at the hearing, that he had more than ten years of investment experience with stocks, bonds, and mutual funds.

Despite Plaintiff's post-hoc assertions that he wanted Mr. Ewanouski "to invest his [IRA Account 2757-0624] so that he could grow his nest egg," the evidence and testimony presented at the hearing demonstrated that Plaintiff did not contemporaneously choose such a conservative approach. The new account applications presented at the hearing evidence that Plaintiff's investment objectives consisted of "Growth" and "Current Income & Capital Appreciation." As evidenced by the customer account statements presented to the NASD arbitration panel (the "Panel"), Plaintiff confirmed every month that his primary investment objective was Growth (quality emphasis).

Moreover, the evidence and testimony made clear that Plaintiff takes immense pride in being actively involved in the management of his investment portfolio and took an active role with regard to the investments at issue. In fact, the evidence and testimony presented at the hearing demonstrated that, from the very beginning, was aware of the activity in his accounts and the risks of such investments. For more than a decade, Plaintiff contacted Mr. Ewanouski on a regular basis regarding the activity in his accounts. Mr. Ewanouski testified that he met personally with Plaintiff on several occasions in order to discuss his accounts. Additionally, the documentary evidence presented at the hearing demonstrated that Plaintiff received transactional confirmation slips for every transaction in his account and monthly account statements that

---

[2] Plaintiff had accounts with Mr. Ewanouski at Morgan Stanley Dean Witter, Inc. ("Morgan Stanley") from approximately 1992 until September 1996. In September 1996, Mr. Ewanouski resigned from Morgan Stanley and commenced employment at UBS Paine Webber (formerly Paine Webber, Inc.) ("Paine Webber"). Claimant voluntarily transferred his accounts and followed Mr. Ewanouski to Paine Webber. In September 1999, Mr. Ewanouski resigned from Paine Webber and commenced employment at Wachovia. Claimant once again freely and voluntarily transferred his accounts from Paine Webber to Wachovia to follow Mr. Ewanouski to Wachovia.

3

summarized all of the transactions in his account. Plaintiff also frequently purchased assets on margin and carried a significant margin balance – climbing as high as $180,608.31 in July 1995. The account statements presented at the hearing further demonstrated that Plaintiff consistently made monthly payments on the margin interest.

Yet, according to the testimony presented at the hearing, Plaintiff <u>never</u> raised any contemporaneous concerns to Mr. Ewanouski or Wachovia that the transactions made in his accounts were unauthorized, nor did he raise any concerns regarding the suitability of the investments in his portfolio. Rather, in a letter dated May 2, 2000, Plaintiff acknowledged that he was both aware of the activity in his accounts and approved of the activity. The May 2, 2000 letter provides the following in pertinent part:

> This will confirm to you that I have examined the trade confirmations and monthly statements relating to my account and I am fully aware of the level of activity, commissions paid, interest charges, if any, and overall profits and losses.
>
> It is my trading objective (notwithstanding previously stated or recorded account objective) to effect short-term transactions in securities, recognizing that such trading involves the risk of financial loss and may generate substantial commission charges.
>
> All transactions have been made with my prior approval and in accordance with my overall investment/trading objectives. Should my investment objectives change for whatever reason, I will notify you or your representative immediately.

This declaration clearly demonstrated to the arbitrators just how active a role Plaintiff played with the investments in his accounts and that he was fully aware of the activity in his accounts.

The pleadings, testimony, and evidence presented to the Panel at the NASD hearing demonstrated that Plaintiff's claims are barred by the principles of ratification, estoppel and affirmance. The fact that Plaintiff lost money in the stock market simply does not create liability for Wachovia and Mr. Ewanouski. Accordingly, the Panel properly entered a unanimous award

(the "Arbitration Award" or "Award") dismissing Plaintiff's claims in their entirety. (See Mot. to Vacate, Ex. 1.) However, Plaintiff now seeks to have this Court vacate that Award.

## ARGUMENT

Plaintiff's Motion to Vacate should be denied for two reasons. First, the Motion to Vacate is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a claim upon which relief may be granted. Second, the Motion to Vacate is subject to dismissal under Federal Rules of Civil Procedure 12(b)(1) and (7) as Plaintiff has failed to join an indispensable party, the joinder of which will destroy diversity jurisdiction, and there is no federal question jurisidction.

### I. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

The Court's authority to review the Arbitration Award "is extremely narrow and exceedingly deferential." Wheelabrator Envirotech Operating Serv. Inc. v. Massachusetts Laborers District Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996); see also Maine Cent. R.R. Co. v. Brotherhood of Maintenance of Way Employees, 873 F.2d 42, 428 (1st Cir. 1989). The parties here entered into an arbitration agreement pursuant to which they contracted to have disputes settled by a panel of arbitrators chosen by them rather than by a judge. Accordingly, the parties have agreed to accept the panel's view of the facts. See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37-38 (1987).

In discussing the courts' limited role in reviewing the merits of arbitration awards, the United States Supreme Court has stated that courts have no business weighing the merits of the grievance or considering whether there is equity in a particular claim. Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 510 (U.S., 2001); see also Misco, 484 U.S. at 38, 98 L. Ed. 2d 286, 108 S. Ct. 364. ("courts do not sit to hear clams of factual or legal error by an

arbitrator as an appellate court does in reviewing decisions of the lower courts."). When the judiciary does so, "it usurps a function [that] … is entrusted to the arbitration tribunal." Garvey, 532 U.S. at 510; see also Steelworkers, 363 U.S. 564, 569 (1960). The First Circuit likewise has noted that, even where it is clear that an arbitrator has exceeded his authority, "courts are not authorized to reconsider the merits of arbitration awards." Advest Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990). Rather, when a district court faces an arbitrator's decision, "the court will set that decision aside only in very unusual circumstances." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S. Ct. 1920, 1923, 131 L.Ed.2d 985 (1995).

As the First Circuit recognizes, the Federal Arbitration Act ("FAA") "does not allow courts to roam unbridled in their oversight of arbitral awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in certain specific ways." Advest, 914 F.2d at 8. The FAA delineates four discrete instances in which an arbitration award may be vacated by a court. A court may vacate an arbitration award where:

1. The award was procured by corruption, fraud, or undue means.
2. There was evident partiality or corruption in the arbitrators, or either of them.
3. The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
4. The arbitrators exceeded their powers, or so imperfectly executed from them that a mutual, final, and definite award upon the subject matter submitted was not made.

See 9 U.S.C. § 10(a).

The First Circuit has judicially crafted an additional ground for vacating arbitration awards. Vacatur of an arbitration award is also permitted where the award was made "in manifest disregard of the law." See Advest, 914 F.2d at 8. To demonstrate manifest disregard of the law, a party moving to vacate an arbitration award must show that the award is "(1)

unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Id. at 8-9. In addition, to rise to the level of manifest disregard, "the arbitrator [must have] appreciated the existence of governing legal rule but willfully decided not to apply it." Id. at 10.

Plaintiff here has failed to allege sufficient facts to state a claim for relief under § 10(a) of the FAA. Nor has he alleged sufficient facts to demonstrate that the arbitrators' award was issued in manifest disregard of the law.

Rather, Plaintiff merely restates the allegations set forth in his Statement of Claim filed with the NASD and regurgitates the testimony of his expert witness, who testified that the securities Mr. Ewanouski purchased on Mr. Dennis' behalf were unsuitable for his retirement account. Plaintiff then erroneously concludes that, because Defendant did not present an expert of its own at the hearing, there was "no evidence to rebut the testimony of Plaintiff's expert." (Mot. to Vacate, ¶ 29.)

Plaintiff's analysis is flawed in many respects. First, as Plaintiff admits, Defendant did present evidence to rebut the testimony of Plaintiff's expert. Mr. Ewanouski testified that the securities he purchased on behalf of Mr. Dennis were "growth stocks" consistent with Mr. Dennis's investment objectives. (Mot. to Vacate ¶ 30.) Mr. Ewanouski further testified that he spoke with Plaintiff on a regular basis and that Plaintiff was fully aware and consented to the purchase and/or sale of each of the equities in question.

Second, the weight and credibility of the testimony of John D. Kattar, Plaintiff's expert, was seriously undermined on cross-examination. In his testimony, Mr. Kattar admitted that (1) he never read the Statement of Claim; (2) he never had any conversations whatsoever with

Claimant; (3) the only conversation he had with Claimant's counsel prior to the hearing was to arrange to testify; (4) he has never had a Series 7 or Series 8 license; (5) his primary experience has been as a money manager for a pension fund; (6) he has never had a conversation with an individual investor regarding a recommendation on a particular stock; (7) he has never purchased equities for an individual account; and (8) his testimony was based upon whether these stocks should have been purchased for a conservative investor, which Mr. Dennis admitted he was not. Mr. Kattar's testimony is further undermined in that he had "no opinion" on a number of stocks complained about by Claimant because he was unable to obtain any information about the stock and/or the companies.[3] Furthermore, Mr. Kattar admitted that a number of the equities purchased by Claimant were appropriate for his accounts.[4]

Mr. Kattar admitted that the only other time he has testified as an expert witness was in the NASD Arbitration of Kathy Kessel v. Wachovia Securities, Inc. and Michael A. Ewanouski, NASD Arbitration No. 03-02543. Similar to the present arbitration, the claimant in Kessel was represented by Mr. Polubinski while the respondents Wachovia and Mr. Ewanouski were represented by David Ward. Furthermore, the facts and allegations in Kessel are virtually identical to the present NASD arbitration brought by Mr. Dennis and even included some of the same stocks. Not surprisingly, the panel in the Kessel arbitration also ruled for the respondents Wachovia and Mr. Ewanouski and denied the claimant's claims in their entirety.

Finally, Defendant presented considerable additional evidence to support its assertion that the securities purchased by Mr. Ewanouski were in fact suitable for Mr. Dennis. Defendant presented Plaintiff's new account documents for his IRA account, which list his investment

---

[3]   These equities include, but are not limited to, the following: Contour Energy Co., ELOT, Geotek, SLI, Intellidata, and H-Power.

[4]   These equities include, but are not limited to, the following: Data General, MCI Worldcom, Media One, Microsoft, EMC, and Intel.

objective as "Growth (quality emphasis)" and his risk tolerance as "moderate." Mr. Dennis further indicated on these documents that he had ten years of extensive experience with stocks, bonds, and mutual funds. Defendant also presented confirmation slips and monthly account statements documenting each transaction.

Moreover, as discussed above, Plaintiff signed an activity letter in which he confirmed that he had examined the trade confirmations and monthly statements relating to his account and was fully aware of the level of activity, commissions paid, interest charges, if any, and overall profits and losses. He further stated that it was his trading objective to effect short-term transactions in securities, recognizing the risk of substantial loss and sales commissions. Finally, he stated that all transactions had been made with his prior approval and in accordance with his overall investment/trading objectives.

The arbitrators heard and considered this evidence and testimony in a two day hearing. There is no evidence that the panel exceeded its powers or so imperfectly executed them that a mutual, final, and definite award was not made. Nor has Plaintiff demonstrated that the Panel's decision was unfounded in reason and fact; based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or mistakenly based on a crucial assumption that is concededly a non-fact, much less that the panel appreciated the existence of governing legal rule but willfully decided not to apply it. Rather, the Award comports with both the facts presented at the hearing and the relevant law. Accordingly, the Motion to Vacate should be denied, and Defendant's Motion to Confirm should be granted.

## II. THIS COURT HAS NO SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS

Mr. Ewanouski was a party to the underlying arbitration and is a party to the arbitration award at issue. In fact, it is Mr. Ewanouski who is alleged to have purchased unsuitable

securities on Plaintiff's behalf. Wachovia is only named by virtue of the fact that it was Mr. Ewanouski's employer. Plaintiff, however, has failed to join Mr. Ewanouski in his Motion to Vacate. Clearly, Mr. Ewanouski is an indispensable party to this litigation. As discussed below, however, joinder of Mr. Ewanouski would destroy diversity jurisdiction, and there is no federal question jurisdiction. Accordingly, the Motion to Vacate must be dismissed under Federal Rules of Civil Procedure 12(b)(1) and (7).

### A.   Mr. Ewanouski is an Indispensable Party, and His Joinder Destroys Diversity Jurisdiction

Federal Rule of Civil Procedure 19 outlines a two-part test for the Court to apply when determining whether a party is indispensable and, accordingly, whether it is proper to dismiss the Motion to Vacate if Mr. Ewanouski cannot be joined.

First, the Court must consider whether Mr. Ewanouski is a necessary party and, therefore, should be joined if feasible. Fed. R. Civ. P. 19(a). Second, because joinder of Mr. Ewanouski would destroy diversity, the Court must determine whether the Motion to Vacate should proceed without Mr. Ewanouski or whether Mr. Ewanouski is indispensable to the motion, in which case the Motion to Vacate must be dismissed. Fed. R. Civ. P. 19(b).

#### 1.   Mr. Ewanouski is a Necessary Party

Mr. Ewanouski will be considered a necessary party and should be joined, if feasible, if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. See Fed. R. Civ. P. 19(a). Here, Mr. Ewanouski is plainly a necessary party as he claims an interest relating to the Motion to Vacate

10

in that Plaintiff seeks to have this Court vacate an arbitration award in which the arbitrators found against Plaintiff and for Mr. Ewanouski. Moreover, his absence will impair or impede his ability to protect that interest.

Joinder of Mr. Ewanouski is not feasible, however, because it would deprive this Court of subject-matter jurisdiction over the Motion to Vacate. Accordingly, the Court must go on to consider whether Mr. Ewanouski is an indispensable party.

### 2.  Joinder of Mr. Ewanouski Destroys Diversity Jurisdiction

"In order to establish federal diversity jurisdiction, the diversity of citizenship must be complete." Barrows v. Robson, 993 F. Supp. 17, 18 (D. Mass. 1997) (dismissing action without prejudice for want of subject matter jurisdiction where the plaintiff and one of the defendants were citizens of Massachusetts). The complete diversity rule requires that to maintain a diversity suit in federal court no plaintiff can be a citizen of the same state as *any* of the defendants. See Strawbridge v. Curtis, 7 U.S. 267, __, 2 L. Ed. 435 (1806) (overruled on other grounds in Louisville, Cincinnati & Charleston R.R. Co. v. Letson, 43 U.S. 497, 555, 11 L. Ed. 353 (1844)) (setting forth "complete diversity" rule); Barrows, 993 F. Supp. at 18 ("[i]n a two-sided case, every party on one side of the litigation must not be a resident of the same state as any party of the other side of the litigation.").

The joinder of Mr. Ewansouski would destroy diversity. As alleged in the Motion to Vacate, Plaintiff is a resident of Massachusetts. (Compl. ¶ 1.) Mr. Ewanouski is also a resident of Massachusetts. Accordingly, the Court must consider whether Mr. Ewansouski is an indispensable party.

11

### 3. Mr. Ewanouski is an Indispensable Party

The Court must next consider "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed because Mr. Ewanouski is indispensable." Fed. R. Civ. P. 19(b). Four factors are relevant to this determination. First, the extent to which a judgment rendered in Mr. Ewanouski's absence will be prejudicial to those already parties. Second, the extent to which any such prejudice can be lessened or avoided by protective provisions in the judgment or other measures. Third, whether a judgment rendered in Mr. Ewanouski's absence will be adequate. Fourth, whether Plaintiff will have an adequate remedy if the action is dismissed for non-joinder.[5] See id.

Both Wachovia and Mr. Ewanouski successfully defeated Plaintiff's claims at arbitration. Therefore, a judgment rendered in Mr. Ewanouski's absence will <u>not</u> be adequate. It would be patently unfair for this Court to permit Plaintiff to deny Mr. Ewanouski the right to advocate against denial of that Arbitration Award simply by neglecting to include him as a party in these proceedings.

Moreover, a judgment rendered in his absence will be of little value to Plaintiff, as the Award presumably would still stand as to Mr. Ewanouski, and it is highly unlikely an arbitration panel would hold Wachovia liable for Mr. Ewanouski's actions when all claims have been dismissed as to Mr. Ewanouski himself.

Finally, Plaintiff had an adequate remedy. Plaintiff could have moved to vacate in state court. The fact that Plaintiff missed that filing deadline does not mean that Mr. Ewanouski should be denied the right to contest Plaintiff's Motion to Vacate. Accordingly, absent federal question jurisdiction, the Motion to Vacate should be denied.

---

[5] This four-factor test under Rule 19(b) overlaps to a large extent with the necessary party test under Rule 19(a).

12

B.   **There Is No Federal Question Jurisdiction**

It is well settled that a federal court must determine the existence of federal question jurisdiction according to the well-pleaded complaint rule. See PCS 2000 LP v. Romulus Telecomms., 148 F.3d 32, 35 (1st Cir. 1998). Under the well-pleaded complaint rule, "a case arises under federal law only if a federally cognizable action appears within the four corners of the complaint."[6] Id.

As the First Circuit has held, "the FAA itself does *not* create a basis for federal subject matter jurisdiction." Bull HN Info., 229 F.3d at 328; see also Giangrande v. Shearson Lehman/E.F. Hutton, 803 F. Supp. 464, 466 (D. Mass. 1992) (granting broker's motion to dismiss complaint seeking to vacate arbitration award because "section 10 of the Federal Arbitration Act, [] does not establish an independent basis for federal jurisdiction."). In this vein, the United States Supreme Court and the First Circuit have recognized,

> [T]he FAA "is something of an anomaly in the field of federal-court jurisdiction" because it "creates a body of federal substantive law" without simultaneously "creating any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise."

PCS 2000, 148 F.3d at 354 (quoting Moses H. Cone v. Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983) and holding that there was no federal jurisdiction over FAA action where plaintiff failed to demonstrate federal question as independent basis for subject matter jurisdiction). Accordingly, "[a] party seeking to enforce rights created by the Arbitration Act must do so in the state courts unless federal jurisdiction can be independently established." Giangrande, 803 F. Supp. at 470.

Plaintiff's reference to the FAA does not confer federal jurisdiction over his claims, and subject matter exists, if at all, on the basis of diversity jurisdiction.

---

[6]   Although there are a few exceptions to this rule, none are applicable here. See PCS 2000, 148 F.3d at 35.

13

## CONCLUSION

As discussed in detail above, the Motion to Vacate is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a claim upon which relief may be granted. Second, the Motion to Vacate is subject to dismissal under Federal Rules of Civil Procedure 12(b)(1) and (7) because Plaintiff has failed to join an indispensable party, the joinder of which would defeat diversity jurisdiction. Accordingly, Defendant respectfully requests that the Court dismiss the Verified Complaint, deny the Motion to Vacate Arbitration Award, and grant Defendant's Motion to Confirm the Arbitration Award.

Dated: August 1, 2005

_____
Pete S. Michaels, Esq.
David L. Ward, Esq.
Deborah Gale Evans, Esq.
MICHAELS & WARD, LLP
One Liberty Square
Boston, Massachusetts 02109
(617) 350-4040

Attorneys for Defendant

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(2), I, Deborah Gale Evans, Esq., certify that on July 25, 2005, I attempted to confer with Edmund Polubinski, Jr., counsel for Plaintiff John Dennis, in a good faith attempt to resolve or narrow the issues set forth in Defendant's Motion to Dismiss the Verified Complaint, Opposition to Motion to Vacate the Arbitration Award, and Cross-Motion to Confirm the Arbitration Award, but was unable to do so.

Deborah Gale Evans, Esq.
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2005 a true copy of the above document was served upon the following counsel by hand delivery.

    Edmund Polubinski, Jr., Esq.
    Richardson and Tyler, Esq.
    15 Broad Street, Suite 900
    Boston, MA 02109

                            Deborah Gale Evans, Esq.
                            Counsel for Defendants