UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DENNIS,                       )<br>                                      )<br>        Plaintiff,          )<br>                                        )<br>v.                                )<br>                                        )<br>WACHOVIA SECURITIES, LLC,    )<br>                                        )<br>        Defendant.      )| CIVIL ACTION NO. 05-CV-11270-GAO |

**SURREPLY IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO DISMISS AND CROSS-MOTION TO CONFIRM**

Plaintiff sets forth two arguments in his "Opposition of Motion to Dismiss the Verified Complaint and Motion to Vacate Arbitration Award, Etc." First, Plaintiff contends that the arbitrators "knew the law as to suitability and then refused to apply it to the facts." Second, Plaintiff contends that Mr. Ewanouski is not an indispensable party. Defendant respectfully disagrees with both contentions for the reasons set forth below.

**I. The Court Should Deny Plaintiff's Motion to Vacate Because
There is Nothing in the Record to Support Plaintiff's Assertion that the
Arbitrators Knew the Law as to Suitability and Refused to Apply it to the Facts.**

    A.    Plaintiff is Not Entitled to Have this Court Revisit
           the Same Claims Already Addressed by the Arbitrators.

Plaintiff has, as he was bound to do, filed a statement of claim with the NASD. Following a two-day hearing, the panel of arbitrators dismissed Plaintiff's claims in their entirety. Plaintiff seeks now to have this Court re-examine the sufficiency of Defendant's proffered evidence and second guess the Panel's evaluation thereof. However, parties may not seek a "second bite at the apple" – either in the form of a complaint or a motion to vacate – simply because they desire a different outcome. See Remmey v. PaineWebber, Inc., 32 F.3d

143, 146 (4th Cir. 1994). "To permit such attempts would transform a binding process into a purely advisory one." Id.

Rather, Plaintiff must satisfy one of the statutorily or judicially created bases for vacating an arbitration award. "The statutory grounds for vacatur permit challenges on sufficiently improper conduct in the course of the proceedings; they do <u>not</u> permit rejection of an arbitral award based on disagreement with the particular result the arbitrators reached." Id. (emphasis added). Plaintiff here asserts that the arbitrators knew the law as to suitability and refused to apply it to the facts. However, absent some showing that the arbitrators knew the law and expressly disregarded it, this Court should <u>not</u> reconsider the sufficiency of Defendant's case. See Advest, Inc. v. McCarthy, 914 F.2d 6, 10 (1st Cir. 1990); see also Prudential-Bache Secs. v. Tanner, 72 F.3d 234, 240-41 (1st Cir. 1995).

B.    The Court is Confined to Review of the Record in Determining
      Whether the Arbitrators Knew the Law and Expressly Disregarded it.

The standard for ruling on a motion to vacate is not, as Plaintiff contends, the same as the standard for ruling on a motion to dismiss a complaint. In ruling on Plaintiff's Complaint and Motion to Vacate, the Court is <u>not</u> confined to consideration of only those facts asserted in Plaintiff's Motion to Vacate. Rather, the only restriction on the Court is that it must "confine[] itself to a review of the panel's award and to the record before the arbitrator." JCI Communications, Inc. v. International Brotherhood of Elec. Workers, Local 103, 324 F.3d 42, 45 (1st Cir. 2003).

C.    The Court Should Disregard the Purported Hearing Testimony Set Forth in the
      "Complaint" and Ed in Polubinski's Affidavit Because it is Not Part of the Record.

The Court must confine itself to review of the record - the Arbitration Award, the pleadings filed by the parties with the NASD, and the exhibits presented to the Arbitrators at the hearing. See id. Although the NASD hearing was taped, there is no official transcript of the

2

arbitration proceedings. Rather, counsel for Plaintiff purports to have transcribed certain portions of the hearing tapes from the NASD proceedings. These cherry-picked transcriptions by Plaintiff's counsel are not part of the record. Therefore, the Court should disregard the purported hearing testimony set forth in Paragraphs 15-26 and 30-31 of Plaintiff's Motion to Vacate and in Paragraphs 4-6 of the Affidavit of Edmund Polubinski, Jr. See id.

Alternatively, the Court should require Plaintiff to provide the Court with a full and complete transcript of the tape recordings from the hearing prepared by an independent third party. The Court simply cannot grant Plaintiff's Complaint and Motion to Vacate the Arbitration Award based solely on Plaintiff's counsel's cherry-picked portions of the NASD proceedings.

D.      The Record is Devoid of Any Evidence
        to Suggest that Vacatur is Warranted in this Case.

There is nothing in the record to support Plaintiff's assertion that the decision of the arbitrators was contrary to the facts and law or that the arbitrators exceeded their powers or so imperfectly executed their powers that a mutual final and definite award upon the subject matter was not made. (See Compl. ¶ 33.) Nor is there anything to support the assertion set forth by Plaintiff for the first time in his opposition brief that the arbitration award is improper because the arbitrators entered it in manifest disregard of the law. (Opp'n Br. at pp. 5-7.)

The arbitration award simply states:

## AWARD

After considering the pleadings, and the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1.      Claimant's claim is dismissed in its entirety.

2.    Any and all relief not specifically addressed herein including a request for expungement

is denied.

(See March 28, 2005 Arbitration Award attached as Ex. A.)

Where, as here, there is nothing in the record other than the result obtained to

demonstrate that the arbitrators knew the law and expressly disregarded it, the motion to vacate

should be denied. See Prudential-Bache Sec., 72 F.3d at 240 ("In order to demonstrate that the

arbitrator both recognized and ignored the applicable law, there must be some showing in the

record, other than the result obtained, that the arbitrators knew the law and expressly disregarded

it.") (internal citations omitted); see also Advest, 914 F.2d at 9-10. This demand for a showing

in the record sets up a "high hurdle" for Plaintiff to clear because, as the First Circuit has noted,

when the arbitrators do not explain the reasons justifying their award, "the movant is hard

pressed to satisfy the exacting criteria for invocation of the doctrine." See Prudential-Bache

Sec., 72 F.3d at 240; see also Advest, 914 F.2d at 10. "In fact, when the arbitrators do not give

their reasons, it is nearly impossible for the court to determine whether they acted in disregard of

the law." Prudential-Bache Sec., 72 F.3d at 240 (quoting O.R. Sec., 857 F.2d at 742, 747 (11

Cir. 1988).

**II.    The Court Should Grant Defendant's Cross-Motion to
Confirm Because the Evidence in the Record Suggests that the
Arbitrators Knew the Law as to Suitability and Properly Applied it to the Facts.**

As discussed above, the Court is confined to review of the Arbitration Award and the

record before the arbitrators. The "activity letter" relied upon by Defendant is part of the record.

The letter was attached to the pre-hearing brief Defendant prepared for the arbitrators. (A true

and correct copy of Defendant's pre-hearing memorandum and the "activity letter" is attached as

Ex. B.) The letter was also presented as an exhibit at the hearing. Accordingly, the Court may

consider that letter in ruling on Defendant's cross-motion to confirm. See JCI Communications., 324 F.3d at 45.

The Arbitration Award must be confirmed if there is any basis for upholding the decision and if there is even a barely colorable justification for the outcome reached. See North Adams Regional Hosp. v. Massachusetts Nurses Ass'n, 889 F. Supp. 507, 512-13 (D. Mass. 1995) ("A court should uphold an arbitrator's interpretation where there exists any plausible argument to support the arbitrator's decision."). Notwithstanding Plaintiff's assertions to the contrary, the activity letter unequivocally supports the arbitrators' ruling. In that letter, Plaintiff acknowledged that he had examined the trade confirmations and monthly statements relating to his account and stated that he was fully aware of the level of activity and overall profits and losses. Moreover, Plaintiff stated that his trading objective was to effect short-term transactions in securities, recognizing that such trading involves risk of financial loss. Finally, and most significantly, Plaintiff stated that "[a]ll transactions have been made with my prior approval and in accordance with my overall investment/trading objectives." See Ex. B. Clearly this letter supports the arbitrators' conclusion that the investments at issue were suitable.

Plaintiff overlooks this admission and relies exclusively on certain cherry-picked portions of the hearing testimony that he contends support his assertion that the arbitrators knew the law but failed to apply it to the facts. Plaintiff fails to recognize, however, that the arbitrators may well have chosen to credit the activity letter presented by Defendant, which demonstrates that the investments made on Plaintiff's behalf were in fact suitable. Given that the arbitrators were presented with evidence upon which such a conclusion could be based, the Court cannot simply assume that the arbitrators ignored the law in entering the arbitration award. See, e.g., Remmey, 32 F.3d at 146. Where arbitrators were presented with conflicting arguments and evidence and

did not explain the reasons for their decision, courts should <u>not</u> vacate the arbitration award
based on manifest disregard of the law. <u>See id.</u>; <u>O.R. Sec.</u>, 857 F.2d at 748.

Moreover, it would undermine public policy for the Court to reconsider the evidence and
second guess the decision of the arbitrators. As courts have noted, arbitration is particularly
useful where, as here, a disappointed investor seeks to find a scapegoat for his losses in order to
undo his investment decision in the wake of hindsight by seeking damages from his broker and
his brokerage firm. <u>See</u> <u>Remmey</u>, 32 F.3d at 146 ("Arbitration has often been used to resolve
securities laws claims brought by disappointed investors against brokerage houses. If all claims
arising out of unprofitable investments were subjected to the full rigors of litigation, the result
could well be increased brokerage transactions costs that would ultimately redound to the
detriment of the investing public.").

Plaintiff here had the opportunity to present evidence and testimony in support of his
claims to the arbitration panel. Unfortunately for Plaintiff, the panel chose to credit the evidence
and testimony presented by Defendant. There is nothing in the record, however, to suggest that
the arbitrators abused their powers or manifestly disregarded the law, nor is there any reason for
this Court to revisit the arbitrators' decision. Rather, the record evidence supports the
arbitrators' decision, and the motion to confirm should be granted.

**III.    Plaintiff's Arguments in Support of His Assertion that
Mr. Ewanouski is Not an Indispensable Party Miss the Point.**

Plaintiff attempts to address each of the four factors that the Court should consider in
determining whether joinder should be permitted. However, his arguments are non-sensical and
unpersuasive.

In analyzing the first factor that the Court is to consider – the extent to which a judgment
rendered in Mr. Ewanouski's absence might be prejudicial to either Mr. Ewanouski or those

already parties – Plaintiff states "[c]learly Mr. Ewanouski is not prejudicial to Plaintiff." (Opp'n Br. at p. 8.) Plaintiff misses the point. The question is whether Mr. Ewanouski's <u>absence</u> will be prejudicial not only to Plaintiff, but also to Defendant and to Mr. Ewanouski himself. Clearly, Mr. Ewanouski's absence will be prejudicial to Mr. Ewanouski, as Plaintiff seeks to vacate an award pursuant to which the arbitrators dismissed all claims against Mr. Ewanouski. As Plaintiff himself points out, should the Court vacate the award and a judgment or decision be entered that is adverse to Defendant, Defendant may proceed against Mr. Ewanouski.

In analyzing the third factor that the Court is to consider – whether a judgment rendered in Mr. Ewanouski's absence will be adequate – Plaintiff simply notes, "Plaintiff's claim is against Defendant as well as its employee. The entity and the employee both are responsible for the harm to Plaintiff and Plaintiff is free to choose its defendant." (Opp'n Br. at 10.) What Plaintiff overlooks, however, is that Plaintiff has <u>already</u> chosen his defendants – he filed a Statement of Claim with the NASD against both Wachovia <u>and</u> Mr. Ewanouski. The case went to a full hearing, and the arbitrators found in favor of Wachoiva <u>and</u> Mr. Ewanouski. A ruling in Mr. Ewanouski's absence would not be adequate because it would be unclear as to whether the judgment pertained only as between Plaintiff and Defendant or whether it would also pertain to Mr. Ewanouski.

The fourth factor that the Court must consider is whether Plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Plaintiff had an adequate remedy in state court. The fact that Plaintiff missed that filing deadline does not warrant proceeding in federal court without Mr. Ewanouski to Mr. Ewanouski's detriment.

The factors that the Court must consider suggest that Mr. Ewanouski is an indispensable party. Accordingly, as discussed in detail in Defendant's Motion to Dismiss and Cross-Motion

to Confirm the Arbitration Award, the motion to vacate should be denied because Plaintiff has

failed to join an indispensable party, the joinder of which would defeat diversity jurisdiction.

## CONCLUSION

For all of the reasons discussed above, Defendant respectfully requests that the Court

dismiss the Verified Complaint, deny the Motion to Vacate Arbitration Award, and grant

Defendant's Cross-Motion to Confirm the Arbitration Award.


Dated: November **2**, 2005

Pete S. Michaels, Esq.
David L. Ward, Esq.
Deborah Gale Evans, Esq.
MICHAELS & WARD, LLP
One Liberty Square
Boston, Massachusetts 02109
(617) 350-4040

Attorneys for Defendant



# Award
### NASD Dispute Resolution

In the Matter of the Arbitration Between:

John Dennis IRA (Claimant) v. Wachovia Securities, LLC and Michael Ewanouski
(Respondents)

Case Number: 04-00361                                    Hearing Site: Boston, Massachusetts

Nature of the Dispute:  Customer vs. Member and Associated Person.

## REPRESENTATION OF PARTIES

Claimant John Dennis IRA ("Dennis") hereinafter referred to as "Claimant":  Edmund
Polubinski, Jr., Esq., Richard and Tyler, LLP, Boston, MA.  Previously represented by:  Edmund
Polubinski, Jr., Esq., Zimble & Brettler, LLP, Boston, MA.

Respondents Wachovia Securities, LLC ("Wachovia") and Michael Ewanouski ("Ewanouski")
hereinafter collectively referred to as "Respondents":  David L. Ward, Esq., Michaels & Ward,
LLP, Boston, MA.

## CASE INFORMATION

Statement of Claim filed on or about:  January 16, 2004.
Claimant signed the Uniform Submission Agreement:  January 8, 2004.

Joint Statement of Answer filed by Respondents on or about:  April 9, 2004.
Respondent Wachovia signed the Uniform Submission Agreement:  April 19, 2004.
Respondent Ewanouski signed the Uniform Submission Agreement:  April 25, 2004.

## CASE SUMMARY

Claimant asserted the following causes of action: unsuitability; unauthorized trading;
misrepresentations and omissions. The causes of action relate to shares of Ask Jeeves, Inc., Elot,
Inc., EntreMed, Inc., Focus Enhancements, Inc., H Power Corp., IXL Enterprises, Inc., Intasys
Corp., VA Linux Systems, Inc., and SLI, Inc.

Unless specifically admitted in their Answer, Respondents denied the allegations made in the
Statement of Claim and asserted various affirmative defenses.

NASD Dispute Resolution
Arbitration No. 04-00361
Award   Page 2 of 4

## RELIEF REQUESTED

Claimant requested compensatory damages in the amount of $132,891.21; attorneys' fees; and costs.

Respondents requested that the Panel dismiss the Statement of Claim, with prejudice; costs and expenses, including attorneys' fees, forum fees, and such further relief as the Panel may deem just and proper.  Furthermore, Respondent Ewanouski requested that the Panel order the expungement of this matter from his CRD record.

## OTHER ISSUES CONSIDERED AND DECIDED

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, and the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1.  Claimant's claim is dismissed in its entirety.

2.  Any and all relief not specifically addressed herein including a request for expungement is denied.

## FEES

Pursuant to the Code, the following fees are assessed:

**Filing Fees**
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:

| | |
|---|---|
| Initial claim filing fee | = $300.00 |

**Member Fees**
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated person at the time of the events giving rise to the dispute.  Accordingly, Wachovia Securities, LLC is a party.

| | |
|---|---|
| Member surcharge | = $1,700.00 |
| Pre-hearing process fee | = $  750.00 |
| Hearing process fee | = $2,750.00 |

NASD Dispute Resolution
Arbitration No. 04-00361
Award    Page 3 of 4

## Forum Fees and Assessments

The Panel has assessed forum fees for each session conducted.  A session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less.  Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| One (1) Pre-hearing session with Panel @ $1,125.00 | | | = $1,125.00 |
| Pre-hearing conference: | June 29, 2004 | 1 session | |
| | | | |
| Four (4) Hearing sessions @ $1,125.00 | | | = $4,500.00 |
| Hearing Dates: | March 21, 2005 | 2 sessions | |
| | March 22, 2005 | 2 sessions | |
| Total Forum Fees | | | = $5,625.00 |

1.  The Panel has assessed $2,812.50 of the forum fees against Claimant.
2.  The Panel has assessed $2,812.50 of the forum fees jointly and severally against Respondents.

### Fee Summary

1.  Claimant is solely liable for:

| | |
|---|---|
| Initial Filing Fee | = $  300.00 |
| Forum Fees | = $2,812.50 |
| Total Fees | = $3,112.50 |
| Less payments | = $1,425.00 |
| Balance Due NASD Dispute Resolution | = $1,687.50 |

2.  Respondent Wachovia is solely liable for:

| | |
|---|---|
| Member Fees | = $5,200.00 |
| Total Fees | = $5,200.00 |
| Less payments | = $5,200.00 |
| Balance Due NASD Dispute Resolution | = $    0.00 |

3.  Respondents are jointly and severally liable for:

| | |
|---|---|
| Forum Fees | = $2,812.50 |
| Total Fees | = $2,812.50 |
| Less payments | = $    0.00 |
| Balance Due NASD Dispute Resolution | = $2,812.50 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

NASD Dispute Resolution
Arbitration No. 04-00361
Award   Page 4 of 4

## ARBITRATION PANEL

David J. Anderson          -        Public Arbitrator, Presiding Chairperson
Jeffrey L. Levy, Esq.      -        Public Arbitrator
Stephen M. Acerra, Jr., Esq.  -    Non-Public Arbitrator

### Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.

David J. Anderson
Public Arbitrator, Presiding Chairperson

3/28/05
Signature Date

Jeffrey L. Levy, Esq.
Public Arbitrator

Signature Date

Stephen M. Acerra, Jr., Esq.
Non-Public Arbitrator

Signature Date

March 29, 2005
Date of Service  (For NASD Dispute Resolution use only)

NASD REGULATION

NASD Dispute Resolution
Arbitration No. 04-00361
Award   Page 4 of 4

## ARBITRATION PANEL

David J. Anderson                    -      Public Arbitrator, Presiding Chairperson
Jeffrey L. Levy, Esq.                -      Public Arbitrator
Stephen M. Acerra, Jr., Esq.         -      Non-Public Arbitrator

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.


_____                     _____
David J. Anderson                           Signature Date
Public Arbitrator, Presiding Chairperson


_____                     _____
Jeffrey L. Levy, Esq.                       Signature Date
Public Arbitrator


_____                     *03-23-05*
Stephen M. Acerra, Jr., Esq.                Signature Date
Non-Public Arbitrator



    March 29, 2005
_____
Date of Service  (For NASD Dispute Resolution use only)

NASD REGULATION

NASD Dispute Resolution
Arbitration No. 04-00361
Award   Page 4 of 4

## ARBITRATION PANEL

David J. Anderson          -       Public Arbitrator, Presiding Chairperson
Jeffrey L. Levy, Esq.      -       Public Arbitrator
Stephen M. Acerra, Jr., Esq.   -   Non-Public Arbitrator

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.

_____                    _____
David J. Anderson                                 Signature Date
Public Arbitrator, Presiding Chairperson

_____                    3/28/05
Jeffrey L. Levy, Esq.                             _____
Public Arbitrator                                 Signature Date


_____                    _____
Stephen M. Acerra, Jr., Esq.                      Signature Date
Non-Public Arbitrator


March 29, 2005
_____
Date of Service  (For NASD Dispute Resolution use only)

NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.

|  |  |
|---|---|
| In the Matter of the Arbitration Between ) <br><br> JOHN DENNIS, ) <br><br> Claimant, ) <br><br> v. ) <br><br> WACHOVIA SECURITIES, LLC and ) <br> MICHAEL A. EWANOUSKI, ) <br><br> Respondents. ) | NASD NO. 04-00361 |

## RESPONDENTS' PRE-HEARING MEMORANDUM AND MOTION TO DISMISS

Respondents Wachovia Securities, LLC (formerly Wachovia Securities, Inc.) ("Wachovia") and Michael A. Ewanouski ("Mr. Ewanouski") (collectively "Respondents") submit this Pre-Hearing Memorandum and Motion to Dismiss to address the allegations of the Claimant, John Dennis ("Claimant" or "Mr. Dennis"). The underlying facts and the applicable law require that all of the claims be dismissed.

## PRELIMINARY STATEMENT

Respondents submit that these claims should be dismissed in their entirety for three (3) basic reasons: (1) Claimant cannot credibly demonstrate any specific wrongdoing by Respondents; (2) Claimant knew exactly what was going on in his accounts, but never complained until long after he lost money in the recent market downturn; and (3) Claimant failed to assert the allegations against Respondents in a timely fashion.

# FACTS

In this arbitration, a very successful and sophisticated businessman seeks to undo his investment decisions in the wake of hindsight. Claimant – an experienced investor who had been Mr. Ewanouski's client at two other firms prior to following him to Wachovia – is simply trying to find a scapegoat for the losses he incurred at Wachovia in the historic stock market break of 2000-2001. Respondents are in no way responsible for any damages that Claimant now seeks. In an attempt to convince this Panel otherwise, the Statement of Claim is full of half-truths, untruths and omissions. Simply put, Claimant's claims are merit less.

### A.    Claimant is a Sophisticated and Savvy Businessman

Claimant is a savvy businessman and media personality. In fact, Claimant takes immense pride in being actively involved in many aspects of his life, including the management of his investment portfolio. Prior to transferring their accounts to Wachovia, Claimant and his wife maintained accounts with Mr. Ewanouski at Morgan Stanley (formerly Dean Witter Reynolds, Inc.) ("Morgan Stanley") and UBS (formerly Paine Webber, Inc.) ("Paine Webber"). To suggest, as the Statement of Claim does, that Claimant was unaware of the activity in his account or the risks of such investments is a complete misstatement of fact. These facts, like so many others, are omitted from the Statement of Claim in an attempt to portray Claimant as something he is not.

### B.    Claimant Opens Accounts At Morgan Stanley

Claimant first met Mr. Ewanouski while Mr. Ewanouski was a registered representative with Morgan Stanley. Claimant was referred to Mr. Ewanouski by his Mr. Dennis' CPA, Len Pepe. Claimant first opened accounts at Morgan Stanley with Mr.

Ewanouski as his investment advisor in or about February 1992. From the very

beginning, Claimant took an active role with his investment accounts. While at Morgan

Stanley, Claimant frequently purchased assets on margin and carried a significant margin

balance – climbing as high as $180,608.31 in July 1995. The account statements further

show that Claimant consistently made monthly payments on the margin interest. Despite

this activity, at no time did Claimant or his wife complain about any of the activity in

their Morgan Stanley accounts.

In September 1996, Mr. Ewanouski resigned from Morgan Stanley and

commenced employment with Paine Webber. Evidently pleased with Mr. Ewanouski's

handling of his accounts, Claimant transferred his accounts to Paine Webber. Of course,

if Claimant was not pleased with Mr. Ewanouski's services, he could have remained with

another Morgan Stanley broker, or transferred to a different firm altogether.

While at PaineWebber, Claimant and his wife maintained three (3) accounts. The

new account applications for accounts indicate investment objectives of "Growth" and

"Current Income & Capital Appreciation". Furthermore, both Claimant and his wife

indicated they had more than ten (10) years of investment experience in equities and

bonds. While maintaining their accounts at PaineWebber, at no time did Claimant or his

wife complain about any of the activity in their accounts.

C.    Claimant Transfers His Accounts to Wachovia

In September 1999, Mr. Ewanouski resigned from UBS and commenced

employment at Wachovia. Once again, Claimant freely and voluntarily transferred his

accounts from Paine Webber to Wachovia in order to retain Mr. Ewanouski as his

financial advisor. Claimant maintained three accounts at Wachovia – a joint CRA

Account with his wife, an individual IRA in the name of John Dennis and a CRA
Account in the name of John Dennis.[1]

Ironically, Claimant makes no allegations regarding the joint account or his CRA
account. The allegations are limited to activity in his individual IRA.

D.    Claimant Knew Of And Approved The Activity In His Individual IRA
      Account [2757-0624]

Despite Claimants' post-hoc assertions that he wanted Mr. Ewanouski "to invest
his [IRA Account 2757-0624] so that he could grow his nest egg"—it is clear that
Claimant did not contemporaneously choose such a conservative approach. Claimant's
primary objective of Growth (quality emphasis) was confirmed to Claimant every month
on his customer account statements. Claimant never advised Wachovia that this
information was in any way inaccurate. Similarly, Claimant never voiced any
contemporaneous complaint regarding any of the transactions in his account – not after
receiving his transactional confirmation slips for every transaction in his account, as well
as monthly account statements detailing every transaction.

To the extent that Claimant now alleges that transactions in his account were
unauthorized, there can be no doubt that Claimant is barred by the principles of
ratification, estoppel and affirmance, from seeking any damages whatsoever for those
transactions. Contrary to the allegations in the Statement of Claim, Claimant took an
active role with regard his investments whether at Morgan Stanley, Paine Webber or
Wachovia. For more than a decade, Claimant contacted Mr. Ewanouski on a regular
basis regarding the activity in his accounts. Mr. Ewanouski also met personally with

---

[1]   The February 2000 monthly statement for Claimant's CRA indicates a journal in the amount of
$1,542.63 to Kathy L. Kessel, Account No. 4740-7579. The statement further shows a transfer of 1100
shares of Elot, Inc. to the same account.

4

Claimant on several occasions, in order to discuss his accounts. Additionally, Claimant

received transactional confirmation slips for every transaction in his account and monthly

account statements which summarized all of the transactions in his account.

Finally, Claimant claimed deductions for capital gains and losses on his 2000 and

2001 tax returns for the losses he incurred at Wachovia as a result of the historic decline

in the stock market. In all these years, Claimant <u>never</u> raised any concerns to Mr.

Ewanouski that the transactions made in his accounts were unauthorized nor did he raise

any concerns regarding the suitability of the investments in his portfolio. Rather,

Claimant, in a letter dated by him May 2, 2000, executed and returned to Wachovia a

declaration of the following:

> **This will confirm to you that I have examined the trade confirmations and monthly statements relating to my account and I am fully aware of the level of activity, commissions paid, interest charges, if any, and overall profits and losses.**
>
> **It is my trading objective (notwithstanding previously stated or recorded account objective) to effect short-term transactions in securities, recognizing that such trading involves the risk of financial loss and may generate substantial commission charges.**
>
> **All transactions have been made with my prior approval and in accordance with my overall investment/trading objectives. Should my investment objectives change for whatever reason, I will notify you or your representative immediately.**

A copy of this document is attached hereto as <u>Exhibit A</u>.

Claimant's acknowledgement of these transactions paints a very clear picture of

just how active a role Claimant played with the investments in his accounts, and how he

was fully aware of the activity in his accounts. Claimant at all times knew the status of

his account. Claimant's assertions that he was unaware of the activity in his accounts is

nothing more than a desperate attempt to somehow re-write an otherwise well-

documented history. Claimant chose to transfer his accounts from Morgan Stanley to Paine Webber, and then to Wachovia for one reason – he was pleased with the level of performance and service that he was receiving from Mr. Ewanouski. Any allegation made by Claimant to the contrary is simply incredulous.

    E.    <u>Claimant Failed to Assert the Allegations Against Respondents in a Timely Fashion.</u>

In the Statement of Claim, Claimant alleges that ten (10) of the equities purchased were unsuitable. However, of these ten (10) equities, all but one (H Power Corp. (HPOW)) were purchased more than three (3) years prior to the filing of the Statement of Claim. Furthermore, of the seventeen (17) purchases complained of, fourteen (14) took place in the year 2000, many of which were executed four (4) years prior to the filing of the Statement of Claim. To now bring these claims in the wake of hindsight – three (3) to four (4) years later – is nothing more than Claimant simply complaining that he lost money in the historic stock market break of 2000-2001. Claimant is not permitted to "wait and see" how the supposedly unsuitable transactions perform, only to complain many years later after the market turns against him. The fact that Claimant lost money in the stock market does not create liability for the Respondents.

Claimant also complains about "losses on Intellidata Shares purchased on various dates" and alleges losses as a result. However, Claimant conveniently failed to include Intellidata Technologies Corp. ("Intellidata") on his chart of allegedly "unsuitable" securities located in the Statement of Claim. A closer review of the purchases and sales of this equity reveals Claimant's self-serving motive. On February 28, 2000, Claimant purchased 1511 shares of Intellidata for a total debit of $15,205.19. On February 28, 2000, Claimant sold these shares and received a credit of $28,736.19 – amounting to a

profit of approximately $13,531. Following this gain, Claimant chose to purchase

additional shares of Intellidata in June 2000 and July 2001. However, due to the historic

downturn in the market in 2000-2001, Claimant was not as fortunate and sustained losses

on his subsequent purchases of Intellidata. Claimant now seeks to "cherry pick" those

Intellidata trades in which he sustained losses while completely ignoring the profits he

previously generated in the same equity. Claimant cannot merely allege that some of the

investments must have been unsuitable simply because they turned out to be unprofitable.

This constitutes nothing more than a claim of "fraud by hindsight" for which no recovery

is available.

## LEGAL DEFICIENCIES OF CLAIMANTS' CLAIMS

It is axiomatic that Claimant has the burden of proving each and every element of

his claims against Respondents, and must prove his case "by a preponderance of the

evidence": that is, he "must make it appear more likely than not" that the material facts

are as asserted by him. 9 Joseph R. Nolan, Massachusetts Practice, Civil Practice §664 at

618 (2d. ed. 1992) (citations omitted). As noted above, however, the facts of this case

contradict Claimant's allegations of wrongdoing. In addition, Claimant's claims must be

denied as a matter of law for the reasons set forth below.

A.     Federal and Massachusetts Securities Law Claims.

Claimant asserts claims for unsuitability, misrepresentation and unauthorized

trading, presumably under Sections 10 of the Securities Exchange Act of 1934,[2] and under

the parallel provisions of the Massachusetts Blue Sky Act[3]. To recover under these

---

[2] Securities Exchange Act of 1934, 15 U.S.C.A. §§ 78j.
[3] Massachusetts Blue Sky Act, Mass. Gen. L. ch. 110A, §§ 101, 102, 410 (1993).

securities laws, Claimant must prove that his investments sustained losses caused by Respondents' "fraud or deceit... in connection with the purchase or sale of any security."

1.    <u>Unsuitability</u>.  Although National Association of Securities Dealers, Inc. ("NASD") and New York Stock Exchange Inc. ("NYSE") rules require that broker-dealers recommend securities that are suitable for a customer's financial situation and investment objectives, by their express terms these rules do not apply to unsolicited trades which a customer himself initiates.  There can be no claim for unsuitability where a broker does not make a recommendation.  <u>See, e.g. Rolf v. Blyth Eastman Dillon & Co.</u>, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96, 525, at 94;060 (2d Cir. 1978) (no liability for merely executing orders for "unsuitable" securities);  <u>Prudential Bache Sec. Inc. v. Pitman</u>, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96, 170, at 90, 929 (N.D. Ga. 1991) ("[a]s long as the customer so directs, the broker may embark upon a course of speculative trading without violating any duty to the customer");  <u>Parsons v. Hornblower & Weeks-Hemphill Noyes</u>, 447 F. Supp. 482, 495 (M.D.N.C. 1977) ("the NASD suitability rule requires that a broker act in accordance with his knowledge of the customer's financial capabilities only when he <u>recommends</u> the purchase, sale, or exchange of any securities"), <u>aff'd</u>, 571, F. 2d 203 (4th Cir. 1978).

With respect to any transactions that were recommended by Mr. Ewanouski, Claimant's unsuitability claim rests on a very recent re-characterization of his financial status and investment objectives.  But the suitability of Respondents' recommendations must be judged by what Claimant told Respondents at the time, not what he now claims – in hindsight - his investment goals really were or should have been.  The NASD Rules of Fair Practice, for example, require that a stockbroker

> shall have reasonable grounds for believing that [his]
> recommendation is suitable for such customer upon a basis
> of the facts, if any, <u>disclosed by such customer</u> as to his other
> security holdings and as to his financial situation and needs.

(CCH) art. III, ¶2152, §2. Respondents had no reason to believe that Claimant had not

accurately described his wealth, business and investment experience, and investment

objectives when he opened his accounts, or accurately represented himself to Mr.

Ewanouski during the long course of their relationship. Respondents were entitled to rely

on Claimant's representations, in part confirmed by the accounts transferred to

Wachovia, in recommending securities for Claimant's accounts.

Beyond re-characterizing his investment profile for this hearing, Claimant merely

alleges that some of the investments must have been unsuitable because they turned out

to be unprofitable. This too constitutes nothing more than a claim of "fraud by hindsight"

for which no recovery is available. See <u>Denny v. Barber</u>, 576 F.2d 465, 470 (2d Cir.

1978). The subsequent performance of a particular security or investment strategy does

not reflect its suitability. That recommendations ultimately turn out to be unprofitable

does not mean that they were "misrepresentations," or even that they were made without

a reasonable basis. Mere errors of judgment by a broker are not actionable. <u>See</u>

<u>Trustman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, [1984-1985 Transfer Binder]

Fed. Sec. L. Rep. (CCH) ¶91, 936, at 90, 669 (C.D. Cal. 1985) (broker's opinions on

interest rate movement not actionable unless made to defraud or deceive). It is well

established that to recover under the securities laws, "[i]nvestors must point to some facts

suggesting that the difference [between actual and anticipated results] is attributable to

fraud," <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir.), <u>cert. denied,</u> 498 U.S. 941

(1990), and must prove that their broker intentionally recommended investments that they

knew to be inappropriate for the customer's stated financial circumstances and investment objectives. See, e.g., Tiernan v. Blyth Eastman Dillon & Co., 719 F.2d 1, 5 (1st Cir. 1983) (unsuitability claim requires showing that quality of stocks bought was inappropriate to investment objectives). Claimant does not and cannot point to any facts that would support such a claim here.

      2.    Misrepresentations. Claimant's contention that Respondents failed to disclose the risks of Claimant's investments is unsupported by the facts. Mr. Ewanouski discussed investment strategy and specific purchases often, at length and in detail. Moreover, any suggestion that Respondents somehow promised a certain profit, or any profit, on these investments is simply not credible.

      Similarly, any allegations that Mr. Ewanouski promised to serve Claimant's interests effectively and to make him money are not actionable. See, e.g. Bischoff v. G.K. Scott & Co., 687 F. Supp. 746, 749 (E.D.N.Y. 1986) (misrepresentations made by broker while opening account are not actionable, since they are not addressed to purchase of particular security but to effort to attract business); Metzner v. D.H. Blair & Co., 689 F. Supp. 262, 264 (S.D.N.Y. 1988) (simple guarantees that account would regain value and assurance of success not actionable); McCoy v. Goldberg, 748 F. Supp. 146, 150 (S.D.N.Y. 1990) (promises that broker would implement a safe and conservative investment program tailored to customers needs and other "self-praising business solicitation[s]" not actionable); Frota v. Prudential-Bache Sec., Inc., 639 F. Supp. 1186, 1190 (S.D.N.Y. 1986) (assurances that "account would be 'properly and prudently managed,' that transactions were being carried out in a 'reasonable manner' or that ...

plaintiffs 'could trust [broker] to look after their interests' … were 'nothing more than the common puff of a salesman,' and not actionable under section 10(b) or rule 10b-5").

      3.    <u>Unauthorized Trading</u>.  Conclusory allegations of recklessness, intention, or misconduct do not transform unauthorized trading into a fraudulent scheme or indicate an element of deceptions sufficient to state a claim of unauthorized trading against a broker under the 1934 Act.  <u>See</u>, <u>Burns v. Prudential Securities</u>, 116 F. Supp.2d 917, 925 (N.D. Ohio 2000).  Furthermore, unauthorized trading claims have been dismissed where plaintiffs have not brought suit within one year of discovery of the facts constituting the violation and within three years after such alleged violation.  <u>See</u>, <u>Teichner v. Paine Webber, Inc.</u>, [1997] Fed. Sec. L. Rep. (CCH) ¶ 99, 513 (S.D.N.Y. June 13, 1997) (citing <u>Lampf v. Gilbertson</u>, 501 U.S. at 364).  A claimant is on "inquiry notice" of an unauthorized trading violation when he or she becomes aware of "financial, legal or other data" providing sufficient "storm warnings" to alert a reasonable person to the probability that there was unauthorized trade.  <u>Id</u>. at ¶ 99, 513; <u>Lenz v. Associated Inns</u>, 833 F. Supp. 362, 370 (S.D.N.Y. 1993).

      In the present case, Claimant was told of the transactions by Mr. Ewanouski.  He also received transactional confirmation slips and monthly account statements detailing each transaction.  He also acknowledged capital gains losses on his tax returns for the years 2000 and 2001.  For Claimant to now assert claims of unauthorized trading is nothing short of unbelievable.

      4.    <u>Causation</u>.    In any event, to prevail in a securities fraud action, a claimant must show "'both <u>loss causation</u> - that the misrepresentations or omissions caused the economic harm – and <u>transaction causation</u> – that the violations in question

caused the [claimant] to engage in the transaction in question." Bennett v. United States Trust Co., 770 F. 2d 308, 313 (2d Cir. 1985) (citations omitted), cert. denied, 474 U.S. 1058 (1986). A Claimant must prove "causation not merely in inducing the plaintiff to enter into a transaction or series of transactions, but causation of the actual loss suffered." Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp., 801 F.2d 13, 20 (2d Cir. 1986), cert. denied, 479 U.S. 1066 (1987).

Claimant cannot prove loss causation in this case. At most, Claimant has alleged that Respondents' purported misstatements caused him to make certain investments. Claimant has not alleged – nor can he prove – that any decline in the market value of his investments was related to Respondents' claimed misrepresentations or omissions. A failure to establish "loss causation" precludes recovery in this case. Respondents cannot be held responsible for losses caused by intervening factors, such as the historic decline in the stock market which preceded the filing of the Statement of Claim. See, Miller v. New American High Income Fund, 755 F. Supp. 1099, 1108 (D. Mass. 1991) (decline of high-yield bond market an intervening cause of loss); see also Bastian v. Petren Resources Corp., 892 F.2d 680, 684-85 (7th Cir.) (losses caused by collapse of oil prices rather than by broker's fraud), cert. denied, 496 U.S. 906 (1990). As a result, Claimant's allegations should be dismissed.

B.    Affirmative Defenses

The following affirmative defenses – independent of Claimant's failures of proof—deny him from any recovery as a matter of law:

1.    <u>Statutes of Limitations</u>.

Claimant asserts claims presumably under the federal securities laws even though

he was on notice of the transactions complained of more than a year before he filed this

claim.  Causes of action brought under the federal securities laws stemming from

transactions that took place prior to the passage of the Public Company Accounting

Reform and Investor Protection Act of 2002, Pub. L. No. 107-204, § 804, codified in part

at 28 U.S.C. § 1658(b) ("Sarbanes-Oxley"), must be initiated not later than the earlier of

(i) one year after the discovery of the facts constituting the violation; or (ii) <u>three</u> years

after such violation.  *See, Aetna Life Ins. Co. et al. v. Enterprise Mortgage Acceptance*

*Co., LLC et al.,* 391 F.3d 401, 410 (2nd Cir. 2004) (Sarbanes-Oxley does not revive

previously expired securities fraud claims and dismissing plaintiffs' claims as time-

barred); *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson et al.,* 501 U.S.

350, 361, 111 S. Ct. 2773 (1991) (holding the one year statute of limitations and the three

year statute of repose of various provisions of the 1934 Securities Exchange Act ("the '34

Act") applicable to causes of action filed pursuant to § 10(b) of the '34 Act).  All of the

activity complained of in the Statement of Claim took place prior to the implementation

of Sarbanes-Oxley.  As a result, Claimant's allegations should be dismissed.

2.    <u>Ratification, Waiver and Estoppel</u>.

From the moment Claimant opened his first account with Wachovia in September

1999, Respondents sent Claimant regular transactional confirmation slips and monthly

statements detailing each and every purchase, sale, commission and interest charge in his

account.  Yet Claimant never once complained about those transactions before he filed

this suit (and now only complains about certain of them and ignores other profitable

transactions). Claimant cannot now, with the benefit of hindsight, repudiate transactions that were disclosed to him promptly and in detail.

Claimant received monthly account statements reflecting each transaction now complained of and confirmations for each transaction shortly after their execution. "The requirement of prompt written notice of repudiation of trades has long stood as a pillar in the law of customer-broker relations," and insures that disputes do not become "'swearing contests' between [the] broker and customer." See, In re Drexel Burnham Lambert Group, Inc., 157 B.R. 539, 543-45 (S.D.N.Y. 1993) (customer ratified 3,000 trades made over 4 ½ year period by failing to complain within the time period specified in Client Agreement even when broker allegedly made oral misrepresentations). Claimant's failure to notify Respondents promptly of any objections certainly bars recovery now, long after the transactions. See, e.g., Modern Settings, Inc. v. Prudential-Bache Sec., Inc., 936 F.2d 640, 645 (2d Cir. 1991) (claim barred for failure to comply with ten-day written notification provision contained in customer agreement); Brophy v. Redivo, 725 F.2d 1218, 1219-20 (9th Cir. 1984) (customer agreement's requirement of immediate written notification of any objection is enforceable to bar claim of unauthorized trading); Costello v. Oppenheimer & Co., 711 F.2d 1361, 1370 (7th Cir. 1983) (courts have held that a sophisticated investor who regularly receives information concerning transactions waives right to recovery by failing seasonably to object); Landry, 473 F.2d at, 373-74 (1st Cir. 1973) (sophisticated, experienced customer estopped from claiming he was an "investor" when he knew his account was being handled as a trading account and failed to object). "[T]he purpose of the [securities laws] is to protect the innocent investor, not one who loses his innocence and then waits to see how his

investment turns out before he decides to invoke the provisions of the [law]." Hecht v.
Harris, Upham & Co., 430 F. 2d 1202, 1207 (9th Cir. 1970) (quoting Royal Air
Properties, Inc. v. Smith, 312 F.2d 210, 213-14 (9th Cir. 1962)); see, e.g. Jaksich v.
Thomson McKinnon Sec., Inc., 582 F. Supp. 485, 497 (S.D.N.Y. 1984) (an investor's
failure to promptly repudiate improper trading ratifies the transactions).

For these reasons, Claimant's allegations should be dismissed.

## CONCLUSION

Claimant has not set forth a single valid basis for recovery from Respondents in this
matter. At all times, Claimant was in control of his accounts, and made all investment
decisions on an informed basis. Claimant knew or should have known all of the
consequences associated with his investment decisions. As such, the Statement of Claim
should be dismissed in its entirety. Furthermore, Respondent, Mr. Ewanouski requests
that this Panel order the expungement of this matter from his industry record, the so-
called "CRD Form".

Respectfully Submitted,

WACHOVIA SECURITIES, LLC and
MICHAEL A. EWANOUSKI

By their attorneys,

Pete S. Michaels, Esq.
David L. Ward, Esq.
Jason C. Moreau, Esq.
Michaels & Ward, LLP
One Liberty Square
Boston, MA    02109
(617) 350-4040

Dated: March 1, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2005, I served true and correct copies of the foregoing, via first class mail, upon the NASD and counsel of record for all parties.

Jason C. Moreau

First Union Securities
901 E Byrd Street
Richmond, VA 23219

Attention: Buddy Doyle
Compliance Administrator

Dear Mr. Doyle:

This will confirm to you that I have examined the trade confirmations and monthly statements relating to my account and I am fully aware of the level of activity, commissions paid, interest charges, if any, and overall profits and losses.

It is my trading objective (notwithstanding previously stated or recorded account objective) to effect short-term transactions in securities, recognizing that such trading involves risk of financial loss and may generate substantial commission charges.

All transactions have been made with my prior approval and in accordance with my overall investment/trading objectives. Should my investment objectives change for whatever reason, I will notify you or your representative immediately.

_John Dennis_
Signature

E701-2757-0624
Account Number

5/2/00
Date