UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN DENNIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-11270-GAO |
| | ) | |
| WACHOVIA SECURITIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION ON MOTION TO
VACATE AND MOTION TO CONFIRM ARBITRATION AWARD**

February 2, 2006

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, John Dennis ("Dennis"), had a securities brokerage account with the defendant, Wachovia Securities, LLC ("Wachovia"). On January 16, 2004, Dennis commenced an arbitration by filing a Statement of Claim with the National Association of Securities Dealers ("NASD") against Wachovia and his account manager, Michael Ewanouski ("Ewanouski"), challenging trades made in his account, and seeking damages in excess of $100,000.00. Two days of hearings were held on March 21 and 22, 2005, after which an award was entered by the arbitrators dismissing Dennis' claims in their entirety. On June 17, 2005, Dennis commenced the instant action against Wachovia by filing a Verified Complaint and Motion to Vacate Arbitration Award ("Motion to Vacate" or "Compl.") (Docket No. 1) in which he is seeking an order to vacate the arbitration

award pursuant to 9 U.S.C. § 10. On August 1, 2005, Wachovia filed a Motion to Dismiss the Verified Complaint and Cross-Motion to Confirm the Arbitration Award ("Motion to Confirm") (Docket No. 5). By this pleading, Wachovia is seeking to confirm the arbitration award and to dismiss the complaint on the grounds that it fails to state a claim upon which relief may be granted, and for failure to join Ewanouski as an indispensable party.

After consideration of the pleadings and arguments of counsel, and for the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion to Vacate (Docket No. 1) be DENIED and that the Motion to Confirm (Docket No. 5) be ALLOWED.

## II. STATEMENT OF FACTS[1]

In 1992, Dennis had accounts at Morgan Stanley Dean Witter, Inc., which were managed by Ewanouski. In September 1996, Ewanouski left Morgan Stanley and joined UBS Paine Webber. Dennis transferred his accounts to Paine Webber to remain with Ewanouski. In September 1999, Ewanouski left Paine Webber and joined Wachovia. Dennis again transferred his account to remain with Ewanouski. See generally Def. Mem. at 3, n.2.

### The Underlying Arbitration

---

[1] Citations are to the Verified Complaint ("Compl.") (Docket No. 1); the defendant's Memorandum of Law in support of its motions ("Def. Mem.") (Docket No. 6); the plaintiff's Opposition to the defendant's motions ("Pl. Mem.") (Docket No. 7); the affidavit of Attorney Edmund Polubinski, Jr. submitted by the plaintiff ("Polubinski Aff.") (Docket No. 8); and the defendant's "Surreply" in further support of its motions ("Def. Reply") (Docket No. 11).

On January 16, 2004, Dennis filed a Statement of Claim, Compl. Ex. 3, seeking damages against Wachovia and Ewanouski in the amount of $132,891.21, plus attorneys' fees and costs.  In this Claim, Dennis alleged that (1) the defendants made unauthorized trades on behalf of the plaintiff, and (2) the investments made were unsuitable for Dennis' retirement account.  In the instant case, Dennis states that "[c]ontradictory evidence was introduced in the arbitration regarding Plaintiff's unauthorized trading claim and thus the sole basis of the action to vacate is upon the claim that the investments Defendant purchased for Plaintiff's account were unsuitable, in violation of NASD Rule 2310."  Pl. Mem. at 2.  The specific trades to which Dennis objected, all of which lost money, are as follows:

| Security | Date Bought | Date Sold |
|---|---|---|
| Ask Jeeves, Inc. | 1/03/00 | 2/03/00 |
| Elot, Inc. | 1/20/00 | 3/16/01 |
| EntreMed, Inc. | 11/6/00<br>11/7/00 | 3/16/01 |
| Focus Enhancements, Inc. | 1/05/00 | 2/03/00 |
| H. Power Corp. | 5/18/01 | 7/11/01 |
| LXL Enterprises, Inc. | 2/03/00 | 2/15/00<br>3/15/00 |
| Intasys Corp. | 3/10/00 | 3/16/01 |
| VA Linux Systems, Inc. | 2/03/00<br>3/15/00<br>6/08/00 | 3/16/01 |

    SLI, Inc.                                  2/15/00                          3/10/00

Statement of Claim, Compl. Ex. 3 ¶ 4.

      The arbitration was held on March 21 and 22, 2005 pursuant to the rules of the NASD. There were three arbitrators, all of whom agreed to an award dismissing the claims in their entirety. Compl. Ex. 1. Consistent with common practice, there is no explanation of the basis for the award, nor is there a report of the evidence. See Prudential-Bache Sec., Inc. v. Tanner, 72 F.3d 234, 240 n.9 (1st Cir. 1995) ("It is well established that arbitrators are not required to either make formal findings of fact or state reasons for the awards they issue."). There is also no official transcript of the arbitration proceedings, nor is one required. See M&L Power Servs., Inc. v. Am. Networks Int'l, 44 F. Supp. 2d 134, 142 (D.R.I. 1999) ("There is no requirement that a transcript be made of the hearings, and many arbitrations occur without having one at all.").

### Scope of the Record

      Both parties have detailed in their memoranda facts that they contend were presented to the arbitrators. See, e.g., Def. Mem. at 2-5; Pl. Mem. at 2-3. In addition, in his Verified Complaint and the affidavit of Attorney Polubinski, Dennis purports to quote testimony based, apparently, on counsel's review of a tape recording of the arbitration proceedings. See Polubinski Aff. ¶¶ 2-3. Wachovia objects to this "cherry picking" of portions of the proceedings and argues that either the entire transcript should be considered, or that the court should disregard the alleged testimony. Def. Reply at 3.

In reviewing an arbitration decision, the court is limited to "the panel's award and to the record before the arbitrator."  JCI Comm., Inc. v. Int'l Brotherhood of Elec. Workers, Local 103, 324 F.3d 42, 45 (1st Cir. 2003).  As noted above, arbitration hearings do not always involve an official transcript and certainly do not include an unofficial version of testimony.  Nevertheless, since the defendant also recites what it contends are facts which were considered by the arbitrators, this court will accept as part of "the record" the cited testimony quoted by the plaintiff as well as the assertions made in Wachovia's pre-hearing memorandum ("Pre-Hearing Mem."), which is attached to Def. Reply.

**Evidence Presented to the Arbitrators**

Both Dennis and Wachovia agree that at least one of Dennis' investment goals was "Growth" and an exhibit was entered in the arbitration showing that on September 8, 1999 Dennis had reported to Wachovia that his investment goal was "Growth (quality emphasis)."  Compl. Ex. 2; Def. Mem. at 3; Pl. Mem. at 2-3.  Wachovia also contends that Dennis had indicated that he had an additional objective of "Current Income & Capital Appreciation" at least with some accounts.  Def. Mem. at 3.  It is Dennis' position that he told Ewanouski that he wanted to "grow his nest egg," which Wachovia denies.  Wachovia also contends that the evidence presented at the hearing established that Dennis "did not contemporaneously choose such a conservative approach."  Def. Mem. at 3.

It is undisputed that Dennis was the only party at the arbitration to put an independent expert on the stand to testify about the quality of the investments.  Consequently,

-5-

Dennis contends that the arbitrators were bound to adopt this testimony. Compl. ¶¶ 29, 31. Wachovia argues, however, that it relied on the cross-examination of the expert, which showed serious flaws in the expert's analysis, as well as the testimony of Ewanouski who was qualified to testify about the suitability of the investment choices. See Compl. ¶¶ 30-31; Def. Mem. at 7-8.

The plaintiff's expert testified that he did not have any information about a number of the stocks, as a result of which he concluded that such stocks were "of little visibility, folded and therefore inappropriate." Compl. ¶¶ 17-27. With respect to other stocks, he opined that they were speculative and inappropriate. Id. The plaintiff also cites to cross-examination testimony of Ewanouski in which he testified that he did not discuss risk with Dennis. See Polubinski Aff. ¶ 4.

On the other hand, Ewanouski testified that the stocks were "growth stocks." Compl. ¶ 30. It was Wachovia's position at the arbitration that Dennis was a sophisticated businessman who was actively involved with his account, and who was informed of every transaction. Moreover, the transactions were consistent with representations Dennis had made about his objectives and his level of expertise. See Pre-Hearing Memo, attached to Def. Reply, at 8-9 ("Claimant's unsuitability claim rests on a very recent re-characterization of his financial status and investment objectives. . . . Respondents were entitled to rely on Claimant's representations, in part confirmed by the accounts transferred to Wachovia, in recommending securities for Claimant's accounts."). Wachovia also argued at the arbitration that the challenges to the transactions were not only

untimely, but were also simply complaints about money lost "in the historic stock market break of 2000-2001." Pre-Hearing Memo at 6.

Finally, Wachovia relied at the arbitration and before this court on the fact that on May 2, 2000, after some of the challenged stocks had been purchased and/or sold, but before other challenged transactions, Dennis signed a letter which states as follows:

> This will confirm to you that I have examined the trade confirmations and monthly statements relating to my account and I am fully aware of the level of activity, commissions paid, interest charges, if any, and overall profits and losses.
>
> It is my trading objective (notwithstanding previously stated or recorded account objective) to effect short-term transactions in securities, recognizing that such trading involves risk of financial loss and may generate substantial commission charges.
>
> All transactions have been made with my prior approval and in accordance with my overall investment/trading objectives. Should my investment objectives change for whatever reason, I will notify you or your representative immediately.

Def. Reply at Ex. 2, submitted as an arbitration exhibit. The plaintiff argues that this undisputed exhibit is not related to any issue of suitability but rather relates to "high levels of activity, short term trading and large brokerage commissions" that are not in dispute here. Pl. Mem. at 7.[2]

Additional facts will be provided below where appropriate.

---

[2] Plaintiff also claims that the letter should not be considered in connection with a motion to dismiss, which should be limited to the complaint. Pl. Mem. at 7. However, the plaintiff does not dispute that the letter, which was introduced as an exhibit, may be considered in connection with the issue of whether to confirm or vacate the award.

### III.  ANALYSIS

#### A.   Review of Arbitration Decision

It is well-established that review of an arbitration decision "is extremely narrow and exceedingly deferential."  Wheelabrator Envirotech Operating Serv., Inc. v. Mass. Laborers Dist. Counsel Local 1144, 88 F.3d 40, 43 (1st Cir. 1996).  See also JCI Communications, Inc., 324 F.3d at 48 (courts "are bound by the very narrow and very deferential standard of review of arbitral decisions").  While a party may seek judicial review of an arbitration decision, "the court will set that decision aside only in very unusual circumstances."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S. Ct. 1920, 1923, 131 L. Ed. 2d 985 (1995).  "[C]ourts have no business weighing the merits of the grievance or considering whether there is equity in a particular claim."  Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509-10, 121 S. Ct. 1724, 1728, 149 L. Ed. 2d 740 (2001) (internal citation and punctuation omitted).  Consequently, an arbitrator's decision will be upheld even in light of a "serious factual mistake," so long as "there exists any plausible argument to support the arbitrator's decision."  North Adams Reg'l Hosp. v. Mass. Nurses Ass'n, 889 F. Supp. 507, 512-13 (D. Mass. 1995).  In short, "in reviewing arbitral awards, a district or appellate court is limited to determining whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it. . . .  Courts are not free to overturn an arbitral result because they would have reached a different conclusion

if presented with the same facts." Remmey v. Painwebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994) (internal quotation and citations omitted).

The grounds for which an arbitration award can be overturned are defined in the Federal Arbitration Act, 9 U.S.C. §§ 1-16. Specifically, Dennis relies on 9 U.S.C. § 10(a)(4), which provides in relevant part as follows:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration –
>
> . . . .
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

See Pl. Mem. at 4. In addition, Dennis relies on another basis, established by case law, which allows for the rejection of an arbitration award "where it is clear from the record that the arbitrator recognized the applicable law – and then ignored it." Advest, Inc. v. McCarthy, 914 F.2d 6, 9 (1st Cir. 1990); Pl. Mem. at 5. To prevail on a challenge based on the arbitrators' "manifest disregard of law," the challenger must establish:

> that the award is (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.

Id. at 8-9 (internal quotation omitted). Accord Prudential-Bache Sec., Inc. v. Tanner, 72 F.3d 234, 237-38 (1st Cir. 1995).

Review of an arbitration decision on the basis that the arbitrator recognized the applicable law but ignored it is a very "narrow basis for review" since "a mere mistake of

law by an arbitrator cannot serve as the basis for judicial review." Id. at 239 n.6.

Moreover, proof of this basis for review is made even more difficult where, as here, the arbitrators do not give any explanation for their decision. As the court explained in Prudential Bache v. Tanner:

> In order to demonstrate that the arbitrator both recognized and ignored the applicable law, there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it. The demand for a showing in the record sets up a high hurdle for [the challenger] to clear, because where, as here, arbitrators do not explain the reasons justifying their award, appellant is hard pressed to satisfy the exacting criteria for invocation of the doctrine. In fact, when the arbitrators do not give their reasons, it is nearly impossible for the court to determine whether they acted in disregard of the law.... *But see Advest*, 914 F.2d at 10 (suggesting that a court could find arbitrators in disregard of the law despite the lack of a record where "the governing law [has] such widespread familiarity, pristine clarity, and irrefutable applicability that a court could assume the arbitrators knew the rule and, notwithstanding, swept it under the rug.").

Id. at 240 (internal quotations and citations omitted).

Dennis contends that the NASD Rule governing suitability of transactions for accounts is so basic and clear that the court should assume that the arbitrators knew it, and that the court can then determine whether they simply ignored the Rule. See Pl. Mem. at 5. Thus, he relies on NASD Rule 2310, which provides:

> In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial needs.

This court will assume, arguendo, that the arbitrators knew and recognized the applicable standard for suitability. Nevertheless, this court finds that Dennis has not overcome the high hurdle of establishing that the arbitrators acted in manifest disregard of the law. Moreover, this court finds that Dennis has not established, pursuant to 9 U.S.C. § 10(a)(4), that the arbitrators exceeded their powers or imperfectly executed them. The record, even if this court were to consider all the testimony proffered by the plaintiff, establishes that the arbitrators had before them conflicting testimony. Contrary to Dennis' argument, the fact that the defendants did not put forward independent expert testimony did not make the plaintiff's expert's testimony as to the suitability of the stocks binding on the arbitrators. See Pl. Mem. at 6-7. The arbitrators could consider the cross-examination of the expert and any weaknesses in his testimony as revealed by such examination. In addition, the arbitrators were free to find credible the testimony of Ewanouski in determining whether, to the extent that he recommended any of the stocks in question, he had reasonable grounds for believing that the recommendation was suitable, as required by NASD Rule 2310. It is undisputed that there was evidence as to the history of the relationship between Dennis and Ewanouski and as to the communications between them, both oral and written, during the course of their relationship. Not only could the arbitrators have concluded from such evidence that Dennis was kept informed, but they could also have considered the letter of May 2, 2000. Contrary to Dennis' argument, that letter, signed after some of the challenged transactions had been completed, was not limited to the issue of churning. Rather, it provided in relevant part

-11-

that "[a]ll transactions have been made with my prior approval and in accordance with my overall investment/trading objectives."  Def. Reply at Ex. 2.

Faced with conflicting evidence, this court cannot second guess the arbitrators' decision, and cannot conclude that they disregarded the law or otherwise exceeded their authority.  See, e.g., Remmey, 32 F.3d at 150-51 (since arbitrators were faced with conflicting testimony, court "cannot simply assume that they ignored the law in reaching their conclusions" about suitability of stock and claims of churning; plaintiff also failed to prove a violation of 9 U.S.C. § 10(a)(4)); JCI Comm., Inc., 324 F.3d at 48-50 (no violation of 9 U.S.C. § 10(a)(4) where arbitrator interpreted agreement); Prudential-Bache v. Tanner, 72 F.3d at 240-41 (where contested issue was clearly presented to the arbitrators, and arbitrators declined to give their reason for their conclusions, plaintiff failed to establish that the arbitrators knew yet disregarded the law, and court will not revisit the merits of plaintiff's claims); Spine Surgery, Inc. v. Sands Bros., Inc., 393 F. Supp. 2d 1138, 1142-43 (W.D. Okla. 2005) (plaintiff failed to establish that arbitrators knew the law and expressly disregarded it; plaintiff basically asked the court to re-weigh the evidence and second-guess the decision of the arbitrators).  For these reasons, this court recommends that the arbitration award in favor of Wachovia be confirmed.

**B.    Failure to Join Ewanouski as a Party**

Wachovia also has moved to dismiss the complaint on the grounds that Dennis failed to join Ewanouski as a party, and that Ewanouski is an indispensable party under

Fed. R. Civ. P. 19. This court concludes that Ewanouski is not an indispensable party, and, therefore, recommends that the motion to dismiss on these grounds be denied.

It is undisputed that the Federal Arbitration Act does not, in and of itself, create a basis for federal jurisdiction, and there must be an independent basis for such jurisdiction. Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 328 (1st Cir. 2000). It is also undisputed in this action that Dennis is proceeding on the basis of diversity jurisdiction, and that the joinder of Ewanouski would defeat that jurisdiction, since both he and Dennis are residents of the Commonwealth of Massachusetts. See Barrows v. Robson, 993 F. Supp. 17, 18 (D. Mass. 1997) ("In order to establish federal diversity jurisdiction, the diversity of citizenship must be complete. In a two-sided case, every party on one side of the litigation must not be a resident of the same state as any party on the other side of the litigation."). Finally, it is undisputed that the statute of limitations for bringing a state court action to review the arbitration award expired before the instant federal suit was commenced, so the dismissal of the instant action would preclude any judicial review.

Fed. R. Civ. P. 19 governs the joinder of parties. The first inquiry is whether joinder is feasible under Rule 19(a). If the person cannot be joined, "the court must determine under the four 'interests' in Rule 19(b) whether 'in equity and good conscience' the action should be dismissed." Drexel Burnham Lambert, Inc. v. Warner, 665 F. Supp. 1549, 1551 (S.D. Fla. 1987). In the instant case, both parties agree that the joinder of Ewanouski is not feasible since it would deprive the court of diversity juris-

diction. See Def. Mem. at 11; Pl. Mem. at 8. Therefore, the issue is whether Ewanouski is indispensable under Rule 19(b).

Fed. R. Civ. P. 19(b) provides that the following factors should be considered by the court in determining "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus regarded as indispensable":

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The decision whether a party is indispensable "can only be determined in the context of particular litigation." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118, 88 S. Ct. 733, 742, 19 L. Ed. 2d 936 (1968). Applying these principles in the instant case establishes that Ewanouski is not an indispensable party.

Wachovia argues that "[i]t would be patently unfair for this Court to permit Plaintiff to deny Mr. Ewanouski the right to advocate against denial of [the] Arbitration Award simply by neglecting to include him as a party in these proceedings." Def. Mem. at 12. However, the positions of Wachovia and Ewanouski are the same, and Ewanouski's position will be fully advocated. See Everett/Charles Contact Prods., Inc. v. Gentec, S.A.R.I., 692 F. Supp. 83, 86 (D.R.I. 1988) (individual director and shareholder not indispensable where position would be fully protected by corporation). Contrary to

Wachovia's contention, it is not at all clear that "Mr. Ewanouski's absence will be prejudicial to Mr. Ewanouski." Def. Reply at 7.

Courts have consistently concluded that "Rule 19 does not require joinder of principal and agent." See, e.g., DePriest v. BASF Wyandotte Corp., 119 F.R.D. 639, 640 (M.D. La. 1988). "It is also well settled that joint tort feasors are not indispensable parties." Id. "Finally, Rule 19 does not require joinder of persons against whom [parties] have a claim of contribution." Nottingham v. Gen. Am. Comm. Corp., 811 F.3d 873, 880 (5th Cir. 1987). "Rule 19(b) provides the court with discretion to proceed without [Ewanouski], given that his presence would destroy federal jurisdiction. This is an appropriate case in which to exercise that power and get on with decision between the two real contestants." Fidelity & Cas. Co. of NY v. Tillman Corp., 112 F.3d 302, 304 (7th Cir. 1997) (internal citations omitted).

## IV. **CONCLUSION**

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Motion to Vacate (Docket No. 1) be DENIED and that the Motion to Confirm (Docket No. 5) be ALLOWED.[3]

                                   / s / Judith Gail Dein
                                    Judith Gail Dein
                                    United States Magistrate Judge

---

[3] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).